Thank you. If it is okay, I'd like to reserve one minute of my time. All right. Try to keep track of your time. I will try my best. Your Honors, my name is William Broberg, and I represent the Defendant Appellant Sean Klar. And on Mr. Klar's behalf and Can you speak up a little bit? Oh, yes. I'm sorry. Thank you. I represent the Defendant Appellant Sean Klar, and on Mr. Klar's behalf, I would like to thank you for hearing me today. Mr. Klar was sentenced in the district court before Blakely v. Washington was applied The rule in Blakely was applied to the federal sentencing guidelines by this court's decision in United States v. Ameline in June of 2004. It was also before the grant of certiorari in United States v. Booker in United States v. Fanfan. Booker and Fanfan have, of course, been decided during the pendency of this appeal. Indeed, the opening brief in this matter was filed only 12 days after that decision. And, of course, that's much before the en banc grant in the Ameline case, the opinion from February 9th or February 10th, 2005, and before the en banc decision and before the extension, I would say, of the en banc decision in the Moreno-Hernandez case of July 5th, 2005. Fanfan error, or the error that the en banc court referred to in a footnote, in which the case didn't really deal with because the Ameline decision deals with the constitutional Sixth Amendment error of a judge mandatorily enhancing a defendant's sentence based on judge-found facts, which the Supreme Court said would violate the Sixth Amendment. What we're talking about in this case is because we don't have mandatory enhancement. The clock? Yeah. There seems to be something wrong with the clock. What's that? The clock seems to be going too fast. It sure does. Wow, it sure does. You barely opened your mouth. Yeah, and I'm down to turn it off. Okay, I'll try to keep watching it here and I'll do it again. Go ahead, add something. I'll turn it off and we'll restart it. All right, but we don't need to hear it. We know up to where you got, we're acutely aware of how much the law has changed since the sentencing. Well, exactly. The five-year mandatory, that's a statute, is that right? That's correct, Your Honor. But that's not at issue. I say that can't be at issue. That was not because of a sentencing guideline. It's because the statute said that, right? Five years for a felon in possession. That's correct. Okay, well, let's forget that. Five years for that. Then he gave him two years, 24 months, for the meth. Absolutely. So what's the problem? I mean, he declined to depart downwards. He exercised his discretion. What are you complaining about? Well, first of all, I don't believe there was any exercise of discretion. Well, he very clearly said, I know I have discretion to go downward. I'm not doing it. Well, he actually ruled on the government's motion, which would have given him discretion to depart downward after he imposed sentence. Well, he did it later. He indicated about as clearly as a man can. Have you ever argued before Judge Tanner? Yes, I have. He doesn't conceal his thoughts very much. I had an atypical experience. And you want to go back before him for his unlimited discretion? I don't believe it would go back before him. What? No, I do not believe that it would go back before him. Why wouldn't it go back before him? Every case that I had, a Judge Tanner case, was reassigned. Well, that would be up to us, but I don't know why you think that. Well, no. Can we reassign by the court or, you know, unrelated to any particular argument? Reassigned by the court. For instance, in this Court's decision in U.S. v. Gunning, which I think is referred to as Gunning 2, I think it's from March of this year, the mandate issued from this Court on April 26, 2005, also on April 26, 2005, there was an order entered by Judge Burgess reassigning the case to himself. This Court didn't say different judge. Remanded to the district court. And I spoke with Mr. Friedman, the attorney for the government, before. And I spoke with the federal public defender on Friday because I have another case coming back from this Court, which is a Judge Tanner case, and it's material to the decision whether to seek resentencing, who the judge would be. And we simply don't know because it is our understanding that Judge Tanner is not doing cases now. But there's no public information, so I don't know what to – but that seems material to the third prong of a plain error. What if you get Judge Tanner again? I have every reason to believe that if we did get Judge Tanner again, that if this Court said, you know, you should apply the factors in 5K1.1, 3553A, which I realize 3553A, which talks about severity of crime and protection of public, that that would seem to weigh against a defendant. But there's the parsimony provision, too, which I think a defendant with no criminal history whatsoever, I actually think that analysis really could make a difference for him. And you're very optimistic. I mean, I don't even – I haven't even seen your client, but to read his record and to read the kind of people he associated with and to some degree facilitated, it's not a very heartwarming picture. And I still haven't – now I want to press you a little bit. Exactly what discretion did Judge Tanner not exercise? He gave you the five-year statutory. He gave – I think he must have gone down on the method of conviction. What was wrong? Well, what was wrong is we know that it's the lowest guideline range sentence, which at the time was mandatory. If the guidelines were advisory, and indeed the judge could consider, and I think there is present in this case serious concerns that could not be considered at all. I think this defendant, I think the background, the mother, the selling him for $30,000 essentially, that kind of stuff seems to me extraordinary and very well could make a difference if a judge was sentencing under an advisory system. So the best you can hope for is a better deal on an amylene remand? Is that where you are? Well, actually, I would think if this Court finds, well, an amylene remand, there's not the Sixth Amendment error. I think it would have to be the extension in Moreno-Hernandez. But we go down that road. If you're with me on the first two prongs of the plain error test, then we get to the third one. If Your Honors conclude there's a reasonable probability that there could be a different sentence, and you also decide to exercise your discretion, you can send it for a resentencing. I think the only reason we would be in the Moreno-Hernandez framework is if you don't know what the district judge would do. You conclude that you're at a dead end. Well, please tell me, why should he give him under the five-year mandatory for being a felon in possession? He wasn't a felon in possession. He has no, he has no, it's possessing using a gun in furtherance of a drug crime. He's not a felon. He has no history. All right, using a gun in furtherance. Was that mandatory or not? It was not mandatory in the sense that a motion was made to depart. There was both the 5K1.1 motion and the one for 35 years. Is that what a statute says, or does it not say it? Well, the statute says it's mandatory. All right. But 3553E gives the court limited authority to impose a sentence below a statutory minimum. All right. And that motion was not. So this is not a Buffett-type thing. He follows the statute and gives him five years. And he knows he has discretion to depart downward. I don't know what your problem, what the point is of your appeal. Well, the problem is with choosing the 84 months, I believe I said in my reply brief, what if the range was 75 months? What the judge is choosing is a point on a line. You know, what the mandatory guideline says was the minimum. In that sense, it's applied mandatorily to him, and he has the fan-fan error, which this court discussed in Moreno-Hernandez. Because what if it was 75 months? Then it probably would have been 75. But with knowing that he had discretion to depart downward for previously prohibited reasons that seem exhibited in Mr. Clark's case, I believe there is a reasonable probability that when you go through 3553A, that if that information was developed, Mr. Clark could receive a more lenient sentence. So what was the number of months he received? He received 84 months, Your Honor. Okay. And the PSR said that if the motion is filed, the probation office would recommend a 60-month term. And was the motion filed? Yes. Okay. So the probation office recommends 60 months. And you think there's a reasonable probability that Vig Tantor or whoever might go to the 60 months now because he has the discretion to do that? Certainly. I do. I think the 3553A factors, Your Honor. I think with this defendant with no criminal history and the extraordinary background, which was alluded to in the pre-sentence report, but then was forbidden from consideration in length of sentence. I really think when you put those things together, there is a reasonable probability of a different, more lenient sentence. There is not a certainty. But that's what troubles me about what the Supreme Court did in Banff and Booker as well, but saying that now we need to look at all these Section 3553 factors that the court was prohibited from looking at before. I mean, I don't know how we would know what a judge would do necessarily given that he didn't even get to hear about the other factors. That's absolutely right, Your Honor. And that is, I think, one good benefit is there was a tension between, I believe it's 3661, and I may have this wrong, which said that a court of the United States, there is no limit on the information that it can receive for sentencing. But then, coupled with the guidelines, only certain types of that information could be considered in setting a length of sentence outside of a specified range. All right. You want to stay a minute? Oh, yes, I do. Thank you very much. Thank you. Good afternoon. May it please the Court. My name is Andrew Friedman. The question for the Court in this case is whether the district court committed plain error when it sentenced Mr. Klarer to 84 months. Since the briefing in this case, as the Court knows, another panel of this Court issued its decision in Ameline, which really replaces some of what the parties briefed in this case and explains the standard. It says the question for this Court is whether the Court can reasonably determine whether the sentence below would have been materially different. So you're – you would agree that under Moreno-Hernandez, this case would be subject to the Ameline limited remand? I think in light of – I'm not aware that there's any petition to reconsider Moreno-Hernandez. And I think in light of that, those procedures apply to this case. I guess there's an outside possibility, but the Court would probably know better than I do. I can't understand what you're saying. I'm sorry. I guess there's an outside possibility that the government is seeking re-hearing, but I don't believe that's the case. I just don't want to bind the whole government to not seeking re-hearing. Assuming the government's not seeking re-hearing, this falls squarely under Moreno-Hernandez. I agree, Your Honor. All right. So given that Moreno-Hernandez says that all cases pending on direct review at the time of Hooker must be sent back for a limited remand. Your Honor, I don't think that's quite what Moreno-Hernandez says. I think Moreno-Hernandez does extend Ameline to cases of nonconstitutional error. That's right. But it repeats that language from the majority opinion in Ameline that said all pending cases on direct review must be sent back to the sentencing judge or the judge to decide the third prong of the plain error test. But that would really be – I think what Moreno-Hernandez does is extend Ameline to nonconstitutional cases, but it doesn't broaden it so that cases which would not be sent back under Ameline. And Ameline suggests that there is a limited class of cases where the court reasonably can determine that the sentence would be the same. Is that how you read Ameline? Because – That there are certain cases that would not be sent back if the court – because Ameline doesn't say return all cases. It says if the court reasonably can determine that the sentence would not have been materially different. I don't – I'm not sure that's what Ameline said. And if it used those words, I'm not sure that it intended that result. But I think what Ameline says is in Ameline we're at a loss to look at this record and see what to do. But I still think there's an open question as to whether the – in fact, I know there's an open question as to whether or not if you can look at the record and the judge says, oh, this person, their crime was so heinous. We – you know, under – he's getting a low sentence because of the effect of the guidelines. If I didn't have the guidelines, then I would sentence him to 60 years more life. Or in another case that's equally clear where there was a judge who said, oh, on the record – both of these cases are real, by the way. A judge who said this is a travesty, but for the guidelines I would have sentenced him to much less. It's not fair. It's not just. And if the guidelines weren't here, I wouldn't do it. Then you have this, where you have – this is a medium level. You have a denial of the government's motion to depart below the statutory minimum. Now, how – what else is there in that record to say under no circumstances had the guidelines been advisory that he wouldn't have sentenced him that way? The record is rapid, Your Honor, but I think the key fact is that the government moved for a downward departure. The Court indicated that it was a – I guess wavered with whether to call it granting or denying, but was accepting the idea that there was substantial assistance and it was freed from the guidelines. And so I think this is the rare case in which it is clear that the Court knew that it was not bound by the guidelines, that it could consider all factors in selecting a sentence, and – Did the Court downward depart by granting the 5K1.1 motion? No. What the Court did is the judge basically first said, I'm going to impose 84 months, and he then turned to the probation officer and said, does that mean I'm granting or denying the motion for a downward departure? The probation officer said, you can call it either one you want, Judge. You can call it granting and not going down or denying. And the judge said, well, I prefer to call it granting 84 months. And then he said, and this is a direct quote, I understand that I do have the discretion to grant the motion downward, but I – well, he said, but I decline to do so. But I think he actually granted it but didn't depart. Isn't that a little confusing on its face? I mean, there was obviously confusion in the courtroom. It is a little confusing on its face. It's not – I guess it's a little confusing technically, but it's not confusing in terms of what the judge wanted to do. He indicated that he knew he wasn't bound by the guidelines, that he could impose a lesser sentence, and that he was choosing to impose 84 months. So I think it's clear about that as to whether technically that is a grant or a denial of the motion. That's confusing, but I don't think that has any weight. As far as you know, would the – if this did go back under Moreno, would the government renew its 5K1.1 motion? And this is my case, and so I – I was not the lawyer in sentencing, but it's my case and I handled it below. And we would renew the motion. I think we are – we're in an unusual position, because Mr. Clark cooperated. We recognized that. We asked the Court to depart downwards. Judge Tanner chose not to, and I think that's a permissible decision, so we're defending that here. If we returned, I would ask the Court for the same sentence that I asked when we were down there last time. Which would be the 60 months? No, the government actually asked for 48 months. Forty-eight months. So Judge Tanner had three different recommendations in front of him. Defense asked for 24 months. The government asked for 48, and probation asked for 60. So everyone was recommending a sentence less than 84 months, and Judge Tanner knew he had discretion to do that and rejected all of those recommendations. Are you familiar with the Seventh Circuit case, United States v. Schiffer, involving a denial of a downward departure? I may be, but not by name, though. Okay. What the Seventh Circuit said there is that a departure decision, even if, quote, unquote, discretionary, was informed by the guidelines, and basically that fact alone required that – it doesn't shed really much light on what the judge would do if the guidelines were completely advisory. I'm not familiar with that decision. I think once the Court grants a downward departure motion, it has discretion to consider all of the factors, that it can look at everything. And what about all those factors that were previously prohibited under the guidelines that the statutory, I guess, 28 U.S.C. 3553 that Justice Breyer explicitly mentions in Fan Fan, that should be considered? I mean, those factors obviously weren't considered in this case. There's only really two factors that the defense has pointed to in this case that it argues, well, there would have been more evidence about these, and those would be bases for a departure. And those really are both factors that were in the record. They were in the pre-sentence report. One is Mr. Clark's childhood, which appears to have been difficult. But the pre-sentence report included the fact that his mother – I think it's a direct quote – that his mother was an alcoholic prostitute who gave him up at age 8. His father was a drug dealer who left him at home all but a weekend a month from the time he was, I guess, 14 or so in high school. So that information was there. And the second factor is treatment of codependents. And one of them had come before Judge Tanner. The other was – the sentence was also generally available. So that's not information that I think was not – Was that the information, but wasn't he forbidden from considering it under the guidelines? Not once he – not once he had received the motion for a downward departure and indicated that he was granting it and free to go down. Right. And if the Court decides – I guess the last point I would make is that it's well established that a district court has discretion whether to grant a motion for a downward departure based on substantial assistance. That's not a decision that's reviewable on appeal. And so if the Court were to conclude that it cannot determine whether the result would have been the same post-Booker, and in that case, I guess a limited remand would be appropriate. But if that's the case, I think the district court – the other decision of whether to depart upward – whether to depart down, not is Judge Tanner's decision and one that he has made and one that's not reviewable or reversible. If the Court has no further – Does the government believe that line of authority about not being able to review a decision that was discretionary still is applicable after the new standard of review that's been set forth by the Supreme Court regarding reasonableness? Yes, Your Honor. I think that that's based on 18 U.S.C. 3742. Nothing about Booker or cases subsequent to that has changed that. And so that would be the government's position. Thank you, Your Honors. I will try to take 10 seconds, and if I can answer any question. The Supreme Court directed the Court of Appeals to review sentences for reasonableness previously to Booker. And as part of that reasonableness review, I think the question is, is when a district judge denies a discretionary – where there's a discretionary decision not to depart downward and it's based on no obvious consideration of the relevant policy statements or the guidelines, and in fact, in one instance, hostility to one of the factors, timeliness, is that a reasonable sentence? And I will defer to the Court. Have any questions or not? Thank you very much. Thank you. United States v. Clark is submitted, and we will hear U.S. v.
judges: Noonan, T. Nelson, Wardlaw